UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANGELIQUE PRICE-WOODSON,                                                                Plaintiff,

v.                                                                    Civil Action No. 3:13-cv-618-DJH

UNITED AUTO WORKERS LOCAL 862 and
VOITH INDUSTRIAL SERVICES, INC.,                                              Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants Voith Industrial Services, Inc. and United Auto Workers Local 862 ("the Union") have each moved for summary judgment in this case. (Docket Nos. 23, 24) The defendants argue that Plaintiff Angelique Price-Woodson cannot prevail on her claims of retaliation, hostile work environment, breach of duty by the Union, and breach of contract by Voith. Because Price-Woodson has failed to demonstrate a genuine issue of material fact with respect to any of her claims, the defendants' motions for summary judgment will be granted.

**I.      FACTS**

Price-Woodson worked for Voith from 2008 until her termination on January 29, 2013. Pursuant to the collective bargaining agreement (CBA) between Voith and the Union, Price-Woodson was required to notify her direct supervisor in advance of any absences from work. (D.N. 24-6 at PageID # 319) The attendance policy set out in the CBA establishes a point system under which an employee receives a half point "for tardiness or early quit," one point "for an absence with advance call-in," and two points "for an absence with no call, no show." (*Id.* at PageID # 320) Upon accumulating eight points, an employee is subject to dismissal. (*Id.* at PageID # 321)

The CBA also outlines a grievance procedure for resolving disputes that arise from the agreement. (*Id.* at PageID # 316)  Under the grievance procedure, an employee has seven days "from the date at which the employee is otherwise aware of the violation to file the grievance or the matter will be considered closed." (*Id.* at PageID # 317)  The CBA further provides that "[t]he parties may mutually agree in writing to extend time limitations at any step of the procedure." (*Id.*)

Price-Woodson testified to the following facts.  She was scheduled to work on January 27 and 28, 2013, but did not go to work either day. (D.N. 23-5 at PageID # 146)  She understood the attendance policy, and she was aware that she had accrued a substantial number of points.[1] (*Id.* at PageID # 147; D.N. 23-6 at PageID # 158)  She tried three times on January 27 to contact her direct supervisor, Andrew Simpson, in compliance with the policy. (D.N. 23-5 at PageID # 147)  However, she did not reach Simpson, and she did not attempt to contact anyone else regarding her absence. (*Id.*)  Later that day, she received a call from union chairman Ted Hunt advising her that she had been suspended and should not come to work on January 28.[2] (*Id.*)

On January 29, Simpson's supervisor, Scott Lallo, called to inform Price-Woodson that her employment was being terminated because of the attendance points she had accumulated. (*Id.* at PageID # 148; *see* D.N. 23-3 at PageID # 114)  Hunt was also on the line. (D.N. 23-5 at PageID # 148)  During the call, Price-Woodson did not state that she wished to file a grievance or challenge her termination in any way.[3] (*Id.*)  She did not speak to a union representative about filing a grievance until at least two weeks later, when she called Hunt to "ask[] him to help [her]

---

[1] Price-Woodson had been suspended on January 15, 2013, for reaching 7.5 points. (*See* D.N. 23-8 at PageID # 232)

[2] According to Voith, Price-Woodson was absent without notice on both January 27 and January 28. (*See* D.N. 23-3 at PageID # 115-16)

[3] Hunt recalls asking Price-Woodson whether she wanted him to file a grievance and being told no. (D.N. 26-1 at PageID # 424; *see also* D.N. 23-2 at PageID # 110)

in getting [her] job back."[4] (*Id.* at PageID # 149)  It is undisputed that no grievance was ever filed regarding Price-Woodson's termination. (*See* D.N. 23-2 at PageID # 111)

Price-Woodson also testified that she suffered pervasive sexual harassment by a number of her coworkers at Voith. (*See, e.g.*, D.N. 23-4 at PageID # 133-35)  However, she did not report those incidents.[5] (*Id.* at PageID # 129-30, 133-36, 139)  Likewise, she did not complain of racial harassment to Voith or the Union. (*See id.* at PageID # 137-38)

## II. ANALYSIS

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of her claims. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[4] Hunt believes that this call was "about a month after [Price-Woodson's] termination." (D.N. 26-1 at PageID # 424)
[5] Price-Woodson did testify that she complained to then-Union chairman Bob Johnson about a coworker inappropriately touching her; however, that incident occurred outside of work, at a gas station. (*See* D.N. 23-4 at PageID # 136, 138)

3

322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

Under this standard, Price-Woodson cannot withstand the defendants' summary judgment motions. Her response to the motions, which consists largely of conclusory assertions and irrelevant legal arguments, contains virtually no citations to the record. Meanwhile, the defendants provide ample citations, including to Price-Woodson's own testimony. The facts presented by the defendants show that summary judgment is warranted on each of her claims.

### A. Counts One, Two, and Three (Hybrid Claim)

In the first two counts of her complaint, Price-Woodson alleges that Voith breached the CBA and the Union breached its duty of fair representation. (*See* D.N. 1 at PageID # 2-4) Such claims are completely preempted by the Labor Management Relations Act (LMRA) and together are construed as a "hybrid" claim under LMRA § 301. *Gilreath v. Clemens & Co.*, 212 F. App'x 451, 459 n.6 (6th Cir. 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). To prevail against either defendant on her hybrid claim, Price-Woodson must show both that the Union breached its duty of fair representation and that Voith breached the CBA. *See Chapman v UAW Local 1005*, 670 F.3d 677, 682 (6th Cir. 2012) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976)). First, however, she must demonstrate that she exhausted internal union remedies. *See id.* at 685.

The Sixth Circuit has long held that "the duty to initiate a grievance remains with the plaintiff." *Long v. Gen. Motors Corp.*, 19 F. App'x 200, 203 (6th Cir. 2001) (citing *Steen v. Local 163, UAW*, 373 F.2d 519, 520 (6th Cir. 1967)). It is undisputed that under the CBA, the deadline for Price-Woodson to file a grievance was seven days from the event giving rise to the grievance—i.e., her termination. (*See* D.N. 24-6 at PageID # 317) It is likewise undisputed that

Price-Woodson failed to timely initiate the grievance process and that no grievance was ever filed regarding her termination. (*See* D.N. 23-5 at PageID # 148) She has presented no evidence excusing this failure. *Cf. Chapman*, 670 F.3d at 686. Thus, her hybrid claim is barred for failure to exhaust internal union remedies. *See id.*; *see also Leffler v. United Food & Commercial Workers Union, Local 880*, 787 F.2d 591 (table), *6-*7 (6th Cir. 1986) (affirming dismissal of § 301 claim for failure to exhaust union remedies where plaintiff's grievance was filed one day late).

In any event, a union breaches the duty of fair representation only if its actions are "arbitrary, discriminatory, or in bad faith." *Linton v. UPS*, 15 F.3d 1365, 1369 (6th Cir. 1994) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). And "'a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Id.* (quoting *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991)). Although Price-Woodson maintains that the Union acted arbitrarily in declining to pursue a grievance concerning her termination, the undisputed facts show that the Union's conduct was in accordance with the CBA, which provides that if a grievance is not filed within seven days, the matter will be deemed closed. (D.N. 24-6 at PageID # 317) Price-Woodson admits that she did not request that a grievance be filed until approximately two weeks after her termination—a week after the deadline had passed.[6] (*See*

---

[6] Price-Woodson suggests that the Union could have filed a grievance beyond the deadline, but the testimony she cites does not show that an extension of the deadline would have been available in her case. (*See* D.N. 26 at PageID # 373-74 (citing Hunt depo., D.N. 26-1 at PageID # 424)) Hunt testified that that there are times when a grievance may not be filed within the seven-day timeframe because the Union or Voith seeks an extension to "allow them to collect all the evidence that they need to better prepare their case." (D.N. 26-1 at 424) No extension was sought in Price-Woodson's case, Hunt said, because she had not initiated the grievance process before the seven-day period expired. (*See id.* at PageID # 424-25) Moreover, Hunt's acknowledgment that extensions are sometimes available is less significant than Price-Woodson

5

D.N. 23-5 at PageID # 148) The Court cannot find that the Union acted irrationally by merely observing a contractual deadline. *See Linton*, 15 F.3d at 1369.

Count Three of Price-Woodson's complaint is titled "pendant [sic] jurisdiction" and reasserts the claims of Counts One and Two under "the common law and the labor law of the Commonwealth of Kentucky." (D.N. 1 at PageID # 5) As Price-Woodson appears to concede, these claims are completely preempted by the LMRA.[7] *See Powers v. Cottrell, Inc.*, 728 F.3d 509, 516 (6th Cir. 2013) ("The Supreme Court has ruled that 'the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003)). Consequently, Count Three also fails for the reasons discussed above.

B.  **Count Four (Retaliation/Public Policy)**

In Count Four of the complaint, Price-Woodson alleges that Voith attempted to sabotage her claim for unemployment benefits by making false statements about her during her unemployment proceedings. (*See* D.N. 1 at PageID # 6-7) In making these statements, Price-Woodson asserts, Voith "was substantially motivated by the desire to discriminate and retaliate against [her] for trying to grieve about her discharge." (*Id.* at PageID # 7) Price-Woodson's only support for this claim is her assertion that on appeal of her unemployment claim, Voith's representative "utterly failed to prove that [she] was guilty of excessive attendance points."[8]

---

suggests, as the CBA itself provides that "[t]he parties may mutually agree in writing to extend time limitations at any step of the procedure." (D.N. 24-6 at PageID # 317) Again, the problem is that Price-Woodson did not timely initiate the procedure—a duty that rested on her. *See Long*, 19 F. App'x at 203.

[7] Price-Woodson acknowledges that "her common law third party contract claims, and her policy claims" . . . . are subsumed by her [h]ybrid claims." (D.N. 26 at PageID # 408)

[8] Like most statements in Price-Woodson's brief, this assertion is unaccompanied by any citation to the record. However, there is no dispute that Price-Woodson ultimately obtained unemployment benefits. (*See* D.N. 23-6 at PageID # 169)

6

(D.N. 26 at PageID # 399) This, she contends, "leaves an apparent retaliatory motive to be inferred from V[oith]'s conduct."[9] (*Id.*) Without citation of authority, she urges the Court to recognize "the tort of a wrongful abuse of civil U[nemployment] I[nsurance] proceedings." (*Id.* (emphasis removed)) Even if she could identify a legal basis for such a claim, she has offered no evidence to support it. Summary judgment is therefore proper on this count as well.

      C.      **Count Five (Retaliation/Kentucky Civil Rights Act)**

Price-Woodson also alleges racial and gender discrimination under the Kentucky Civil Rights Act (KCRA). She asserts that while employed by Voith, she "was visited with gender and racially motivated harassment of a severe and pervasive nature . . . constituting a hostile work environment"; that she complained to Voith and the Union about the hostile work environment; and that the defendants retaliated against her for those complaints "by VOITH discharging the Plaintiff, and by the union failing to provide fair representation to her" in connection with her termination.[10] (D.N. 1 at PageID # 7-8) Price-Woodson devotes little discussion to these claims in her summary judgment response, and she cites no evidence to support them. Although she asserts that she has direct evidence of retaliation (*see* D.N. 26 at PageID # 401), she fails to present any evidence in support of this contention, much less evidence that "requires no inferences to conclude that unlawful retaliation was a motivating factor in [Voith's] action." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008)

---

[9] The heading accompanying this argument declares that "Voith's participation in Plaintiff's U.I. claim is a signature of sorts of its retaliatory animus." (D.N. 26 at PageID # 399)

[10] Count Five does not expressly refer to the Union's failure to act following Price-Woodson's termination but simply states that the Union "fail[ed] to provide fair representation to her in the manner described above." (D.N. 1 at PageID # 8) The complaint's only description of an alleged lack of fair representation pertains to Price-Woodson's firing. (*See id.* at PageID # 3-4) Accordingly, the Court reads Count Five as referring to the Union's inaction following her termination, not to any failure by the Union concerning the alleged harassment.

(citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)) (defining "direct evidence"). Her retaliation claims thus cannot survive on a direct-evidence theory.

The claims fail under the *McDonnell Douglas/Burdine* burden-shifting framework as well. That test, which applies in cases involving circumstantial evidence, requires a prima facie showing by the plaintiff that "(1) [s]he engaged in protected activity, (2) this exercise of h[er] protected civil rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action."[11] *Id.* (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)). Price-Woodson cannot satisfy the first two elements of this test because her own testimony, as cited by the defendants, establishes that she did not complain of racial or sexual harassment to Voith or Union representatives. (*See* D.N. 23-4 at PageID # 129-30, 133-39) She offers no evidence whatsoever to rebut the defendants' showing on this point.

Price-Woodson's hostile work environment claim fails for similar reasons. An employer may be either directly liable or vicariously liable on a claim of hostile work environment; the applicable standard depends on whether the perpetrator was the plaintiff's coworker or her supervisor. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 n.2 (6th Cir. 2013) (citing *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013)). An employer is subject to direct liability for unlawful harassment by a plaintiff's coworker "if the employer was negligent with respect to the offensive behavior." *Vance*, 133 S. Ct. at 2441. The negligence standard is met if the plaintiff shows that "the employer's response to [her] complaints 'manifest[ed] indifference

---

[11] Retaliation claims brought under the Kentucky Civil Rights Act are subject to the same standard as Title VII claims. *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)).

8

or unreasonableness in light of the facts the employer knew or should have known.'" *Waldo*, 726 F.3d at 814 (second alteration in original) (quoting *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008)). Vicarious liability exists where the alleged harasser is the plaintiff's supervisor—meaning that "the employer has empowered [the alleged harasser] to take tangible employment actions against the victim, i.e., to effect 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 133 S. Ct. at 2443 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Price-Woodson testified that she was harassed by her immediate supervisor, Andrew Simpson, as well as Hunt and various other coworkers. (*See* D.N. 23-4 at PageID # 127) Although she asserts in her summary judgment response that Simpson and Lallo "are 'supervisors' within the meaning of *Vance*" and that "Hunt is in the nature of a supervisor" (D.N. 26 at PageID # 390), nothing in the record suggests that either Hunt or Simpson was authorized "to take tangible employment actions against" Price-Woodson.[12] *Vance*, 133 S. Ct. at 2443. The fact that Lallo—Simpson's supervisor—called to inform Price-Woodson of her termination indicates that Simpson did not possess this power. Thus, Voith's liability, if any, is for coworker harassment.

Price-Woodson does not attempt to show that the defendants were aware of the alleged harassment and failed to take appropriate action in response. As noted above, she admitted at her deposition that she never reported the incidents. The defendants cannot be said to have acted unreasonably in response to Price-Woodson's complaints if she never complained in the first place. *See Waldo*, 726 F.3d at 814. As a result, her hostile work environment claim also fails.

---

[12] Whether Lallo qualifies as a supervisor under *Vance* is immaterial, as Price-Woodson does not contend that she was harassed by Lallo.

9

### D. Count Seven (Vicarious Liability)[13]

The final count of Price-Woodson's complaint asserts that Voith and the Union are vicariously liable for the alleged wrongful acts of their agents and employees. (*See* D.N. 1 at PageID # 8) This count is ultimately irrelevant, because Price-Woodson's underlying claims cannot survive summary judgment.

### III. CONCLUSION

The defendants have demonstrated that there is no genuine dispute of material fact with respect to any of Price-Woodson's claims. Accordingly, it is hereby

**ORDERED** that Defendant Voith Industrial Services, Inc.'s Motion for Summary Judgment (D.N. 23) and Defendant United Auto Workers Local 862's Motion for Summary Judgment on All Claims (D.N. 24) are **GRANTED**. A separate judgment will be entered this date.

---

[13] There is no Count Six in the complaint.